CAS 64.—ACTION BY B. R. DOUGHERTY AGAINST THEO-
DORE WEICK.—February 8, 1906.

# Weick v. Dougherty.

Appeal from Kenton Circuit Court.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Livery Stable Keepers—Bailment For Hire—Care Required.—
Where plaintiff left his huckster's wagon and merchandise
therein in defendant's livery stable to be cared for during
the night, having paid the usual price for such service in
advance, defendant became a bailee thereof for hire, and was
bound to exercise such diligence as would be exercised by a
person of ordinary prudence with reference to his own prop-
erty, and if plaintiff's property was destroyed by fire, and
could have been saved by ordinary diligence, defendant was
liable.

2. Damages—Grounds of Recovery—Profits.—Where plaintiff's
huckster's wagon was destroyed by fire while temporarily left
in defendant's livery barn for hire, plaintiff was not entitled
to recover profits of his business lost because of the loss of
his wagon.

3. Appeal—Damages—De Minimis Non Curat Lex.—Where plain-
tiff was entitled under all the evidence to recover $352.45 for
the loss of his huckster's wagon and contents, and the ver-
dict rendered was only $362.45, which was not as much as
the interest on the damages which might have been allowed
from the date suit was brought until the time of the trial,
defendant was not prejudiced by an instruction erroneously
permitting the jury to allow plaintiff $10 damages for loss
of profits of his business.

Opinion of the Court by Judge Settle—Affirming.

Appellee by this action in the Kenton circuit court
sought to recover of appellant damages for the de-

struction of his wagon and its load of merchandise in a fire which consumed the latter's livery stable in the city of Covington. The complaint made in the petition was that appellant discovered the fire in time to have saved the wagon and contents, and by ordinary care could have saved, both after discovering the fire and before the property was consumed. By an amended petition, filed to make more specific the averments of the original petition, appellee set forth in itemized form the articles of merchandise consumed with the wagon, and the value of each, and also the value of the wagon, and in addition averred that appellant's negligence in permitting the destruction of his (appellee's) wagon and contents caused a temporary suspension of his business as a huckster, and a consequent loss to him of profits. The entire amount of damages claimed by appellee was $500. Upon the trial in the lower court appellee was awarded $362.45 damages by the verdict of a jury. Judgment was thereupon entered in his behalf for that amount, and the reversal of that judgment is sought by this appeal. The facts deducible from the evidence as a whole were as follows: Appellee, a huckster, residing at Williamstown, made stated trips to Covington, hauling such country products as appertained to his business. These he would dispose of in Covington, and there supply himself with a load of merchandise for sale or exchange upon his return to the country. The merchandise purchased in Covington would immediately be placed in his wagon, and the wagon, thus loaded, together with the horses used in pulling it, appellee had for several years been accustomed to leave at night, and until he got ready to return to the country, in appellant's livery stable and to his care. As appellee usually started home

about 6 o'clock in the morning, for convenience his
vehicle, by direction of appellant, was always placed
on a wash floor on the west side of the stable about
30 feet from the door, and nearer thereto than any
other vehicle. The wash floor sloped upward from
the door and driveway, and in order to keep the
wagon stationary while on the wash floor it was
necessary to set the brake with which it was supplied.
When ready to remove the wagon from the stable it
was only necessary to release the brake, and the
wagon, of its own weight and momentum, would run
out on the street, the tongue being guided by the per-
son releasing the brake. This manner of removing
the wagon from the stable seems to have been known
to, and was followed by appellant and his employes.
On the day before the fire, appellee, as usual, left his
wagon and team in appellant's stable about 4 o'clock
p. m., and paid him in advance the usual price for
having it and the horses cared for during the night.
Appellee then returned to his home by rail, leaving
the wagon to be carried to the country the next morn-
ing by his driver, who remained somewhere in the
city that night. The fire by which appellant's livery
stable and appellee's property were destroyed broke
out about midnight starting in an adjoining building,
from which it spread to the stable. According to appel-
lant's testimony, his servant, Glenn, with the aid of
others, got all of the horses out of the stable, and he
and appellant's son got out all appellant's vehicles
except a small sulky, which was burned, although all
the saved vehicles were further from the door, and
nearer the fire, than appellee's wagon. Several light
vehicles belonging to other patrons of appellant were
also destroyed. It was stated by appellant on two
occasions after the fire in speaking of the loss of ap-

pellee's wagon, "If I had once thought of that brake
on the wagon, and thrown it off, it would have run
out by itself."

Appellant's testimony tended to contradict much
of that introduced by appellee, but we are not pre-
pared to say that the jury erred in the verdict re-
turned by them. It follows, therefore, that the lower
court properly refused, in passing on the motion for
a new trial, to disturb the verdict, upon the ground
that it was flagrantly against the evidence. In re-
spect of appellee's wagon and merchandise, appellant
was a bailee for hire, and therefore bound to use ordi-
nary care to protect it from injury while in his pos-
session. So, if by ordinary diligence or care, he could
at the time of the fire have prevented its destruction,
it was his duty to do so. And if the destruction of
the property resulted from the failure of appellant
to exercise such care, the loss, to the extent of its
value, was properly made to fall upon him, and not
upon appellee. Ordinary diligence or care is such
as would be exercised by a person of ordinary pru-
dence with reference to his own property, under the
same or like circumstances to those which attended
the burning of appellant's stable. 3 Am. & Eng.
Ency. of Law (2d Ed.) pp. 746, 747; Jackson v. Rob-
inson, 18 B. Mon. 1.

The instructions given by the trial judge correctly
advised the jury as to the law of the case, except that
one of them authorized the allowance to appellee of
damages for the loss of profits in his business as a
huckster, alleged to have been caused by the negli-
gence of appellant in permitting the destruction of
his wagon. The jury should not have been allowed
to consider such loss of profits in estimating appel-
lee's damages, nor should he have been allowed to

introduce evidence upon that question. This is not the character of case in which damages can be recovered for loss of profits. "In an action to recover damages for an injury to property by reason of the negligence of the defendant, the plaintiff cannot recover anything on account of his inability to instantly supply himself with other property in lieu of that injured or destroyed. Such damages are too remote to be the subject of judicial ascertainment.   *  *  *" L. & N. R. R. Co. v. Tippenhauer, 10 Ky. Law Rep. 401; Koch v. Godshaw, 12 Bush, 318; 8 Am. & Eng. Ency. of Law (2d Ed.) p. 618.

It is insisted for appellant that as the jury were authorized by an instruction from the court to include in their estimate of damages loss of profits resulting to appellee by the destruction of his wagon, and such damages were improperly allowed by them, the error of the court in giving such instruction was necessarily prejudicial to appellant's rights. Ordinarily this would be true, but we do not think the instruction in question was prejudicial in this case, as the damages allowed by the jury for loss of profits are not only readily ascertainable, but so insignificant in amount as to require the application of the maxim, "De minimis non curat lex." In other words, the actual value of appellee's wagon and merchandise, according to all the testimony on that point, was $352.45, and this sum the jury were compelled to award appellee as the actual damages sustained by him, if they found for him at all; so in awarding him $362.45, by the verdict returned, it is manifest that they allowed him only $10 for loss of profits resulting from the alleged interruption of his business by the destruction of his wagon.

Appellee's petition was filed December 11, 1903, and the judgment appealed from was rendered November 11, 1904, 11 months later; so if he had been allowed for that time, interest on the $352.45, by the jury, as they might properly have done, it would have amounted to $19.40, which would exceed the $10 allowed for loss of profits $9.40. Section 756, Civ. Code, forbids a reversal except for substantial error, and the only error here presented by the record affects in such slight degree the substantial rights of appellant that it will not justify a reversal.

Wherefore, the judgment is affirmed.